STEVEN G. KALAR
Federal Public Defender
Northern District of California
SOPHIA WHITING
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700
Facsimile: (415) 436-7706
Email: Sophia_Whiting@fd.org

Counsel for Defendant Zelaya-Archaga

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JOHAN ZELAYA-ARCHAGA,<br>Defendant. | **Case No.:** CR 20–046 CRB<br><br>**DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM**<br><br>**Court:** Courtroom 10, 19th Floor<br>**Hearing Date:** June 3, 2020<br>**Hearing Time:** 10:00 a.m. |

## INTRODUCTION

Johan Zelaya-Archaga is a 19-year-old immigrant and this low-level drug offense is his only criminal conviction. The Court has requested additional briefing regarding the correct sentencing guidelines to apply to Mr. Zelaya-Archaga's case. The correct guidelines are 6-12 months, and a sentence of time served is an appropriate low-end sentence. In the alternative, if the Court determines that the government has now upheld their burden of establishing a higher base offense level, a downward variance to time served is still appropriate. A time served sentence of six months is warranted in light of Mr. Zelaya-Archaga's lack of prior convictions, youth, difficult circumstance, inevitable deportation, and to avoid unwarranted sentencing disparities among similarly situated defendants.

**BACKGROUND**

Mr. Zelaya-Archaga was arraigned on his first two state cases in July of 2019, when he was just 18 years old. Most teenagers that age are just finishing high school. Yet he travelled alone to a new country, where he does not speak the language, burdened with the responsibility of financially supporting his entire family in Honduras. After his state arrests, he was successfully on ankle monitoring from at least July 24, 2019, to November 14, 2019. Supplemental Declaration of Sophia Whiting in Support of Defendant's Sentencing Memorandum (Supp. Whiting Decl.), ¶ 4. He made four court appearances while he was out of custody. *Id*. He accidentally missed one appearance because of a miscommunication, and showed up on a Saturday instead. *Id*. He promptly showed up to court subsequently to address the missed date. *Id*. He therefore did not intentionally miss any court dates during the entire time he was on pretrial release, and was in regular communication with his attorney. *Id*. After months of being successfully monitored, Mr. Zelaya-Archaga foolishly removed the monitor. Removing the monitor was an impulsive and inexcusable decision, but not done in order to flee from his case, rather, he could still be found at the residence where he had been monitored.

After his third arrest, the offense for which is being sentenced, there was a plan to address the root causes of Mr. Zelaya-Archaga's criminal conduct—his youth, poverty, immigration status, language barrier, and lack of resources. Supp. Whiting Decl., Exhibit B. Mr. Zelaya-Archaga was assigned a social worker to establish community support and a verifiable re-entry plan. *Id*. Given the mitigating circumstances, Mr. Zelaya-Archaga's attorney was under the impression that the re-entry plan was viable to release Mr. Zelaya-Archaga from custody and resolve the case. Before that could happen, though, Mr. Zelaya-Archaga was federally indicted as part of the Federal Initiative for the Tenderloin (FIT). Since then, he has served an additional four months in custody, which he was not expected to serve in the state, for a total of six months. Even more significantly, he now faces deportation, whereas he would have been provided community resources and remained in this country had the case continued in state court.

DISCUSSION

**I. The Sentencing Guidelines (18 U.S.C. § 3553(a)(4))**

The appropriate base offense level is 12, subtracting two levels for acceptance of responsibility,

the total offense level is 10. In Mr. Zelaya-Archaga's criminal history category (I),[1] the resulting advisory sentencing guidelines are 6-12 months.

The government has the burden to prove the quantity of drugs involved, in order to compute the base offense level under Guideline section 2D1.1. *United States. v. Harrison-Philpot*, 978 F.2d 1520, 1522 (9th Cir. 1992). Base offense level 12 is correct because the government has not provided a reliable quantification of the drugs found in Mr. Zelaya-Archaga's possession on December 31, 2019. The Court should therefore adopt the lowest base offense level applicable to the drugs he admitted to possessing under section 2D1.1(c): offense level 12. U.S.S.G. § 2D1.1(c)(14).

The government first attempted to rely on the estimated gross weight of seized items in the police report, suspected to be narcotics based on presumptive field testing. *See* Dkt. 12 at 4. Such evidence is not sufficient to meet their burden, as it is based on unreliable presumptive testing and on gross weight, which makes no differentiation between actual narcotics, untested items, and packaging.

On May 26, 2020, the government provided the defense with laboratory reports from January 10, 2020. Mr. Zelaya-Archaga requested laboratory reports before the last hearing, but was told there were none for the charged offense. The report confirms what Mr. Zelaya-Archaga admits—that items seized *contain* certain narcotics. The report does not explain what was actually tested, or how what was tested was used to determine the weight. The defense has requested laboratory bench notes to identify what items were actually tested, but the government has not yet provided them. Drug quantity calculations, including those made in a police forensic laboratory report, must contain a sufficiently reliable explanation. *United States v. Rosacker*, 314 F.3d 422, 425-26 (9th Cir. 2002). Courts cannot rely on estimates and inferences regarding something as easily quantifiable as the nature and weight of the suspected narcotics seized in this case. Because there is no reliable quantification of the drugs found in Mr. Zelaya-Archaga's possession for distribution on December

---

[1] The government argues that his criminal history category is II because he was on bail when he committed the offense, citing U.S.S.G. § 4A1.1(d). Section 4A1.1(d) only applies to "any criminal justice sentence." Pre-trial release, including bail, does not constitute a "criminal justice sentence" since Mr. Zelaya-Archaga had not been convicted, nonetheless sentenced, of any crime. Therefore, even under offense level 21, his range would be 37-46 months.

31, 2019, the court should adopt base offense level 12.

Even assuming the government had carried its burden to establish a higher offense level, however, a sentence of time served is nevertheless warranted for the following reasons: (1) the mitigating background circumstances outlined in Mr. Zelaya-Archaga's initial sentencing memorandum, (2) the low-level nature of Mr. Zelaya-Archaga's offense, and (3) to avoid disparities among similarly situated defendants.

## II. Mr. Zelaya-Archaga is a Young, Low-Level, Inexperienced, and Vulnerable Offender

The fact that Mr. Zelaya-Archaga was caught with multiple drugs on him is not indicative of his level of drug dealing. In fact, his conduct displays just how inexperienced and desperate he was. He did not understand the consequences of his actions. If he had received any prior convictions, he would have a better understanding of the harm he was perpetuating and the potentially steep penalties. In his own words, as translated by a court-certified interpreter, "[d]uring the several months I have spent in jail I have analyzed and totally understand that what I did is very wrong. What I was doing was bad. I would like to help out the city of San Francisco to counter balance what I did." Whiting Declaration in Support of Defendants Sentencing Memorandum (Whiting Decl.), Exhibit A.

It is typically those at the lowest level of drug dealing, those that are the most inexperienced and vulnerable, that are tasked with holding a variety of drugs on their person. Mr. Zelaya-Archaga was duped into holding these types and quantity of drugs by people far more experienced and involved in the drug trade. While Mr. Zelaya-Archaga takes responsibility for his criminal conduct and has had time to reflect that selling any amount of drugs negatively impacts public health, he is ultimately an incredibly low-level and replaceable player in the fight against this country's (and the Tenderloin's) drug problem. Mr. Zelaya-Archaga's case was being handled in state court, where he was charged with all three arrests, and the contemplated resolution was a rehabilitative re-entry plan. Giving Mr. Zelaya-Archaga more custodial time does not provide necessary additional specific or general deterrence. Mr. Zelaya-Archaga is already facing far more severe consequences than he imagined, and he knows the even steeper penalties he could face in the future. And to those higher in the drug distribution hierarchy, Mr. Zelaya-Archaga is just another young and disposable mark.

The mistakes Mr. Zelaya-Archaga made leading up to this conviction are consistent with his

desperate circumstances and his naiveté. These circumstances will change once he is returned to his family in Honduras. His attitude is also changed now that he understands the harm he participated in and the consequences of his actions.

**III. A Sentence of Time Served is Appropriate Given the Sentences Available (18 U.S.C. § 3553(a)(3))**

The Court is well aware of the number of analogous cases sentenced to time served in this district. The following five cases are a sampling of those involving various comparable types and quantities of narcotics, where the Court determined that a sentence of time served was warranted. The government's position has not been consistent, although the resulting sentences largely have.

- *United States v. Pedro Josiel Martinez-Elvir*, CR 19-545 SI: The government argued, and the PSR concluded, that the appropriate total offense level was 24 based on the quantity and types of substances possessed by Mr. Martinez-Elvir, including fentanyl, methamphetamine, cocaine base, and heroin, for a sentencing range of 37-46 months. The government recommended 37 months. Mr. Martinez-Elvir was sentenced to time served (effectively four months).
- *United States v. Seth Carus*, CR 19-305 RS: Mr. Carus, a U.S. citizen, pled guilty to possessing for distribution 39.5 grams gross of fentanyl, 22.4 grams gross of crack cocaine, 7.7 grams gross of methamphetamine, and 20.6 grams gross of heroin. The government's position was that the base offense level was 24, but left the issue open for argument. The government nonetheless agreed to *diversion*. Mr. Carus had previously received diversion in state court for a controlled substance offense. Mr. Carus is not expected to serve any time in custody and the case will be dismissed, provided he completes his one-year term of diversion. He will, of course, not be deported.
- *United States v. Ristir Trejo*, CR 19-535 RS: The government showed that Mr. Trejo possessed or distributed a total of 41 plastic baggies of fentanyl, 57 baggies and knotted plastic wrap pieces of heroin, 15 bags of cocaine base, and 1 plastic bag of methamphetamine, for a base offense level of 18. His criminal history category was II, and he had a warrant pending and multiple prior arrests for distribution at the time of his

arrests. He was charged federally for four separate arrests over a 15-month period. He was sentenced to time served (effectively 6.5 months).

- *United States v. Arnulfo Estrada*, CR 19-546 CRB: Mr. Estrada was convicted of possessing for distribution 95 bindles of cocaine base, 21 bindles of methamphetamine, and 18 bindles of heroin. The arrest was the first of two in the same month, and he had a prior conviction for illegal entry. Mr. Estrada was sentenced to credit for time served (effectively 3.5 months).
- *United States v. Damien Galeas-Raudales,* CR 19-660 EMC: Mr. Galeas-Raudales had *five* arrests for drug sales in the Tenderloin over a period of 18 months, including one conviction for which he was on supervision at the time of the federal offense. The base offense level was 18 based on the type and quantity of drugs, and the government requested a sentence of 24 months. He was sentenced to credit for time served (effectively 3.5 months).

Of all the above cases, Mr. Elvir-Martinez's case is perhaps most instructive for Mr. Zelaya-Archaga's. They are both incredibly young, just 18- and 19-years old, and this is their first conviction. In both cases, the government asked for very long sentences, 37 and 41 months, in light of the drug types and quantities. But the conduct is indisputably hand-to-hand street sales to support incredibly difficult circumstances. Neither is anything close to a drug kingpin, yet they are charged with federal felonies and face deportation. They were never afforded the opportunity to participate in diversion programs or any of the other rehabilitative options that would be available in state court for a young, first-time, low-level defendant. The six months Mr. Zelaya-Archaga has spent in custody, compared with Mr. Elvir-Martinez's four, already constitute his longest (and only) jail sentence.

**CONCLUSION**

For the foregoing reasons, and the additional mitigating factors discussed in Mr. Zelaya-Archaga's initial sentencing memorandum, a sentence of time served (essentially six months), followed by three years of supervised release, is warranted.

Dated: May 28, 2020

Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender
Northern District of California

/S

SOPHIA WHITING
Assistant Federal Public Defender